USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/27/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESUS D. MEJIA HUERTA,

                        Petitioner,

-against-

KRISTI NOEM et al.,

                        Respondents.

26-CV-01248 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

On February 5, 2026, Petitioner Jesus D. Mejia Huerta was arrested and detained pursuant to an incomplete and undisputedly flawed warrant. Three weeks later, Petitioner appeared for a show cause hearing in which he stated that he still did not know why he had been arrested or detained. The insufficient notice provided to Petitioner in connection with his detention and arrest violated his Fifth Amendment rights, as well as the Government's own internal regulations and governing statutes. Accordingly, and for the reasons set forth in greater detail below, the petition is GRANTED and Petitioner must be released from custody.

## BACKGROUND

**I.     RELEVANT FACTS[1] & PROCEDURAL HISTORY**

Petitioner is a Venezuelan national who came to the United States with his wife and three children fleeing political violence. Pet. ¶ 30. In January 2023, Petitioner and his family reported to the U.S. border for a scheduled appointment with Customs and Border Protection, via the

---

[1] The following facts are taken from the undisputed facts in the Petition and the declarations and exhibits accompanying the Government's brief. *See* Dkt. Nos. 1, 12–14. The Court refers to the Petition for Writ of Habeas Corpus, Dkt. No. 1, as "Pet."

CBPOne app created by the Department of Homeland Security ("DHS"). *Id.* ¶ 17. At the appointment, Petitioner was served with a Notice to Appear charging him as inadmissible pursuant to the Immigration and Nationality Act ("INA") ¶ 212(a)(7)(A)(i)(I). Dkt. No. 14 ¶ 5. On the same day, immigration officials granted Petitioner and his family humanitarian parole pursuant to INA § 212(d)(5)(A) and subsequently allowed them to enter the United States pending adjudication of their immigration status. *Id.* ¶¶ 6–7. The parole was initially authorized for the period of January 23, 2023 until January 22, 2024. Dkt. No. 13-3. Upon entry into the United States, Petitioner moved with his family to New York and submitted an application for asylum within the required one-year period, which remains pending. Pet. ¶ 7. At some point in 2024, Petitioner and his family also obtained Temporary Protected Status, although the record is not clear as to precisely when the status was granted or terminated. Dkt. No. 14 ¶ 9; Pet. ¶ 7. While in New York, Petitioner obtained work authorization and lawful employment. Pet. ¶ 8.

On January 30, 2026, Dobbs Ferry police officers stopped Petitioner while he was driving and issued a traffic-related charge.[2] *Id.* ¶ 10. In connection with the charge, Petitioner's car was impounded. *Id.* On February 5, 2026, Petitioner went to pick up his impounded car. *Id.* According to Petitioner, law enforcement authorities were aware that Petitioner would be picking up his car that day because he had been contacted by officers asking when he would arrive and what he was wearing. *Id.* Unbeknownst to Petitioner, federal law enforcement officials had also notified Immigration and Customs Enforcement ("ICE") that Petitioner had been arrested. Dkt.

---

[2] It also appears that Petitioner was later charged by the Westchester County District Attorney with grand larceny. Dkt. No. 13-4 at 6. At the February 26 hearing, Petitioner asserted his innocence of this charge, and stated that it was a misunderstanding related to the possible wrongdoing of some passengers in his Uber for-hire vehicle. Petitioner also stated that he had a court date in Westchester County for this charge on February 12, 2026, which he was unable to attend due to his detention. The Court ordered counsel for the Government to notify the assigned Assistant District Attorney that Petitioner had missed the court date due to his detention. Confirmation of that notification is to be provided to the Court by March 2, 2026.

2

No. 14 ¶ 10.  DHS ran a records check and found that Petitioner's parole had expired and thus, in DHS' view, he was unlawfully present in the United States.  *Id.* ¶ 12.  When Petitioner arrived to pick up his car, the FBI arrested him, took him to an FBI office in Rye, New York, and waited for ICE officers to arrive.  Dkt. No. 13-5 at 3; Pet. ¶ 10.  ICE subsequently arrested Petitioner at the FBI office and transported him to an ICE office in Newburgh, New York.  Dkt. No. 13-5 at 3.  At some point on February 5, 2026, ICE obtained and issued an I-200 Warrant of Arrest for Petitioner.  *Id.* ¶ 13.  The Government's declaration states that the warrant was issued in the morning of February 5, Dkt. No. 14 ¶ 13, but there is nothing on the warrant to corroborate that assertion.

At the Newburgh ICE office, an ICE agent served the arrest warrant on Petitioner and read its contents to him in Spanish.  Dkt. No. 13-6.  Several features of the warrant are of particular relevance to the Petition.  First, the warrant cites "sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations" as the authority to issue and serve the warrant.  *Id.*  Second, the warrant states, "I have determined that there is probable cause to believe that [Petitioner] is removable from the United States.  This determination is based upon . . . ."  *Id.*  The next section of the warrant form provides a checklist of possible bases for the issuing officer's determination.  *Id.*  On Petitioner's warrant, none of the boxes is checked, nor is there any additional text indicating the basis for the officer's purported determination.  *Id.*

On the evening of February 5, 2026, Petitioner was transferred to the Orange County Jail where he is currently being detained.  Dkt. No. 14 ¶ 15.  On February 13, 2026, Petitioner, through his next friend, filed the instant Petition for a Writ of Habeas Corpus seeking release from detention.  Petitioner claims that his arrest and detention violated his Fifth Amendment

rights as well as the INA and ICE's own regulations. Pet. ¶ 15. On the same day, the Court issued an order to show cause enjoining the Government from removing Petitioner, soliciting briefs from the parties, and convening a hearing that occurred on February 26, 2026, with the Petitioner present, appearing *pro se*. Dkt. Nos. 6, 10.

## DISCUSSION

"[T]he Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).[3] The "essence of due process" is "the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976). In the Second Circuit, "the *Mathews v. Eldridge* balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025). "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* Because Petitioner was detained without sufficient notice or process, and in violation of ICE's own regulations, each of the *Mathews* factors weighs in his favor.

The first factor weighs in Petitioner's favor because the private interest at stake is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. Petitioner testified that his private interest is particularly affected by his

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

4

detention given his family's current circumstances. In the month before he was detained, Petitioner's wife was hospitalized for several weeks with a serious medical condition. Pet. ¶ 9. At the hearing, Petitioner explained that he was responsible for taking care of his wife as well as their three young children; he was the person who took them to school and to their pediatrician appointments. He stated that his family has suffered a great deal.

Moreover, as described above and in the parties' filings, Petitioner and his family have followed all of the procedures and directives given to them by officers of the United States and provided by the immigration laws: (i) they waited in Mexico and made an appointment to approach the border using the CBPOne app, as was the Government's policy at that time, Pet ¶ 7; (ii) they approached the border crossing at the time of their appointment and presented themselves for inspection and to seek asylum, *id.*; (iii) upon inspection, they were granted entry into the United States under humanitarian parole, Dkt. No. 13-3; (iv) they applied for asylum within a year of entry, as required, Pet. ¶ 7; (v) that application is still pending, through no apparent fault of Petitioner and his family, *id.*; (vi) Petitioner stated that he has applied for a U-Visa or T-Visa after cooperating with law enforcement when he was the victim of a violent assault, which application also remains pending; (vii) Petitioner has been working lawfully, under authorization presumably obtained as a result of his asylum application, *id.* ¶ 8; and (viii) the family was under the protection of Temporary Protected Status for Venezuelan nationals, seemingly until that status was ended in November 2025 by Respondent Noem, an action that has been deemed unlawful by the district court in the Northern District of California and the Ninth Circuit Court of Appeals, although those rulings are currently stayed pending adjudication on the merits by the Supreme Court, *see Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). Under the totality of these circumstances, the first factor strongly weighs in Petitioner's favor. *See, e.g.*,

*Black v. Decker*, 103 F.4th 133, 151–52 (2d Cir. 2024) (finding that the first factor weighed "heavily" in favor of a petitioner whose family suffered significant hardship due to his detention).

Second, the procedures employed by ICE officers in connection with Petitioner's arrest and detention created a high risk of the erroneous deprivation of his liberty interest. The record in this case demonstrates that Petitioner was arrested without a proper warrant. The warrant served on Petitioner was undisputedly incomplete; it did not provide *any* basis for ICE's purported determination that Petitioner is removable from the United States. *See* Dkt. No. 13-6. It is beyond dispute that arresting an individual without providing a basis for the arrest creates a high risk of the erroneous deprivation of his liberty. The record does not include any indication that Petitioner was provided with an explanation as to why he was being detained.[4] Petitioner's statements at the February 26, 2026 hearing underscored the lack of notice provided; nearly three weeks after his arrest, Petitioner stated that he still did not know, and had not been told, why he was arrested or detained. This lack of notice violates the very "essence of due process" which requires "a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews*, 424 U.S. at 348–49.

The Government does not seriously contest that the warrant for Petitioner's arrest was not properly prepared or executed. In fact, at the February 26, 2026 hearing, the Government

---

[4] It is also worth noting that what little information is provided on the warrant is contradicted by the Government's position in this litigation. The warrant cites Section 236 of the INA as the authority for its issuance. See Dkt. No. 13-6. As many courts in this District have found, such a warrant "unambiguously establishes that the Petitioner was detained pursuant to ICE's discretionary authority under § 1226." *Han v. Noem*, No. 25-CV-10753 (VSB), 2026 WL 322963, at *5 (S.D.N.Y. Feb. 6, 2026). Despite the clear language of the warrant, the Government claims that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Dkt. No. 12 at 4. At the February 26, 2026 hearing, the Government's only response to that discrepancy was that its own pre-printed warrant form is flawed and should not have cited Section 236.

6

conceded that the warrant was "flawed." However, the Government maintains that Petitioner's due process rights are limited because, as an individual previously paroled into the United States, Petitioner remains "'treated' for due process purposes 'as if stopped at the border.'" Dkt. No. 12-1 at 18 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). Therefore, the Government argues, Petitioner "is lawfully detained pursuant to Section 1225(b)(2)(A), and neither his procedural due process rights nor any substantive due process rights have been violated." *Id.* at 17.

Several courts in this Circuit have rejected that argument on the premise that an individual who has resided in the country for several years, developed community ties, and obtained work authorization "cannot be analogized to a person stopped within 25 yards of the border." *Rodriguez-Acurio v. Almodovar*, No. 25-CV-6065 (NJC), 2025 WL 3314420, at *26 (E.D.N.Y. Nov. 28, 2025); *Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *9 (S.D.N.Y. Dec. 10, 2025); *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025). Furthermore, the Court need not reach the issue of the statutory basis for Petitioner's detention to find that Petitioner was not afforded sufficient process. Even if "ICE had the statutory, discretionary authority to detain [Petitioner] . . . the question is whether, in exercising that authority, ICE is required to adhere to the basic principles of due process. There is no dispute that it is." *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 417 (S.D.N.Y. 2025). Here, Petitioner was arrested without sufficient notice and process.[5] As

---

[5] The Government's position appears to confuse the meaning of "notice" in the sense of "advance notice," rather than the due process meaning of "notice" as "notified of the asserted basis for an action or event." *See* Dkt. No. 12 at 3. The Court is not suggesting, at least under the circumstances of this case, that due process requires *advance* notice to a potential detainee of the grounds for arrest. But that does not change the fundamental requirement of due process that if the government is going to deprive someone of their liberty, that person must be informed of the basis for that deprivation and have an opportunity to challenge it.

discussed herein, the warrant is facially invalid and there is no evidence of any other effort to inform Petitioner of the basis for his arrest and detention. Regardless of the statutory basis for his detention, the lack of sufficient process in connection with his arrest created a high risk of the erroneous deprivation of his liberty. Accordingly, the second factor weighs strongly in Petitioner's favor.

The third *Mathews* factor also weighs in Petitioner's favor because Petitioner's arrest did not comport with the Government's own regulations and governing statutes. The third factor requires consideration of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Black*, 103 F.4th at 153. Here, affording Petitioner proper process would impose no greater administrative burden on the Government than its regulations already require. As the Government acknowledges, ICE's own regulations require an individual to be "arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1); Dkt. No. 12 at 3. And while there are circumstances in which ICE is authorized to make warrantless arrests, *see* 8 U.S.C.§ 1357(a)(2), the Government does not argue that those circumstances apply here, nor has the Government shown that ICE implemented the procedures required following a warrantless arrest, *see* 8 C.F.R. § 287.3. Thus, providing Petitioner with a properly executed warrant would not have imposed a burden on the Government that it was not already required to undertake. For this reason, the third *Mathews* factor weighs in Petitioner's favor.

Petitioner seeks "the typical remedy" for unlawful executive detention which is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Such a remedy is appropriate because Petitioner's arrest and detention were unlawful from their inception. Where an

individual's "imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Rojas v. Almodovar*, No. 25-CV-7189 (LJL), 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025). Furthermore, an alternative remedy, such as a burden-shifted bond hearing, would not sufficiently correct the lack of process afforded to Petitioner in advance of his arrest. A hearing would therefore fail to remedy ICE's failure to engage in a "deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Claus." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025). Accordingly, the appropriate remedy is Petitioner's release.

This year is the 250th anniversary of the Declaration of Independence and the founding of this great country. One of the well-known sparks for the Revolution and the Declaration of Independence was the colonists' ire at agents of the state, acting with apparent impunity, seizing persons and property without due process of law. A fundamental rejection of this conduct is also enshrined in our Constitution. For the second time in the past seven days, the Court is now granting a habeas Petition because agents of DHS have failed to provide even the relatively low amount of due process that their own regulations provide before a person present inside the United States can be detained. Regardless of one's views about the wisdom of policies adopted by DHS regarding mass arrests and removals of non-citizens, every American should expect and demand that, at a minimum, Government agencies follow the Constitution, the law, and their own regulations when doing so. The rule of law matters. Due process matters. No one, including American citizens, is safe from the power of the state if we abandon these principles. Accordingly, for all of the reasons stated above, the Great Writ is issued and the Government is ordered to release the Petitioner forthwith.

## CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is GRANTED. The Government is hereby ORDERED to release Mr. Mejia Huerta from custody forthwith. The Government is further ORDERED to file a letter certifying compliance with this Court's Order by no later than **noon on Monday, March 2, 2026.** The Court will retain jurisdiction over this case pending the Government's status letter.

Nothing in this Order relieves the Government of its obligation, pursuant to the Court's oral order at the February 26 hearing, to inform the assigned Assistant District Attorney at the Westchester County District Attorney's Office that Petitioner missed his February 12 court date due to his immigration detention, and to file a letter on the docket by **Monday, March 2, 2026** confirming compliance with this Order.

Dated: February 27, 2026
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge